SMITH, State Superintendent of Banks, Respondent, v.
HOFFMAN, Appellant.

(220 N. W. 479.)

(File No. 6051.   Opinion filed July 7, 1928.)

*Lauritz Miller* and *Fred D. Shandorf*, both of Mitchell, for Appellant.

*Hitchcock & Sickel*, of Mitchell, for Respondent.

MORIARTY, C. This action was brought by the superintendent of banks to recover the sum of $10,681, which was paid to the defendant by the American State Bank of Parkston, a few months before said bank passed into the hands of the superintendent for liquidation.

The facts are as follows:

The bank involved in the action was engaged in the banking business at Parkston from the year 1899 until April 10, 1924, when the superintendent took charge of it.

Prior to the year 1918, this bank was known as the German American Bank, but in 1918 the name was changed to American State Bank. During all the time from the year 1910 to April, 1924, John Schmierer, Jr., was cashier of this bank, and from 1899 to until some time early in the year 1924 A. N. Hoffman was vice president, and during all that time, from 1910 to the early part of 1924, these two men were the only managing officers of the bank. A. N. Hoffman died about April 16, 1924. He was a brother of the appellant. From about the year 1900 until December, 1919, the appellant, William Hoffman, was in Zurich, Switzerland, in the employ of the International Harvester Company. And during

a large part of that time he had a deposit in the American State Bank of Parkston.

On January 29, 1911, the appellant mailed two checks to A. N. Hoffman, and in the letter accompanying these checks he acknowledges the receipt of a bank statement of January 8th, instructs that the inclosed checks be deposited to his account, "as heretofore," and further says:

"I have no time today to comment on the statement, but notice you have made a loan to Mr. Schmierer of quite a large amount without consulting me. Please do not make any more loans until further advised by me."

On July 29, 1911, appellant mailed to the bank a letter reading as follows:

"Inclosed please find my check for four hundred dollars ($400.00) which I deposit with the bank to be known as 'working deposit fund' which alone is subject to check by A. N. Hoffman or myself.

"All funds now on deposit or that may be deposited is to be known as 'regular deposit fund,' which alone is subject to check by myself or my written order.

"Thus please open up two deposit accounts one to be known as the 'regular deposit fund' and the other 'working deposit fund,' the working fund will be replenished by check from myself from time to time as the fund is used up. Please acknowledge receipt of this letter and oblige. Yours truly, Wm. Hoffman.

"Copy to A. N. Hoffman, Parkston, So. Dak., U. S. A."

And on the same date he mailed to A. N. Hoffman a letter containing the following language:

"Inclosed please find a copy of my letter to the bank which explains itself which I wish strictly adhered to. Thus you will see that all funds that are paid out for my account are to be checked out from the 'working deposit fund' and the 'regular deposit fund' is only subject to check by myself or order. All moneys collected or received are to be credited to the 'regular fund.' If any loans are to be made, same are to be communicated to me, and, if granted, will issue check for same."

Accounts with the two funds were opened by the bank. During the time between 1911 and September, 1915, A. N. Hoffman made collections and received payments for appellant and deposited

some of the funds in the general fund account; some funds belonging to appellant, A. N. Hoffman, sent to banks at Lane and Alexandria, S. D., and at Sibley, Iowa, and certificates of deposit were issued to appellant therefor. These acts were approved by appellant. During the period mentioned, some loans were made out of appellant's general deposit account. These loans were negotiated by A. N. Hoffman, but there is no proof that they were made without first being approved by William Hoffman, or that the money for them was withdrawn from the account without his check or written order.

On September 13, 1915, there was over $10,000 in the general fund to William Hoffman's credit, and on that date $10,000 was charged out of that account, and $5,000 credited to the personal account of A. N. Hoffman, and $5,000 credited to the personal account of John Schmierer, Jr., to balance the debit to William Hoffman's account.

At that time A. N. Hoffman and Schmierer, in addition to being managing officers of the bank, were engaged as partners in the land business. The $10,000 credited to their personal accounts, as above stated, was checked out and used by them in their said partnership business. There is no proof as to any check or order authorizing withdrawal from William Hoffman's account; the only written record of the transaction being two deposit slips showing credits to the personal accounts of A. N. Hoffman and John Schmierer, Jr., of $5,000 each, each deposit slip bearing the written words, letters, and figures, "from Wm. H. $5,000."

On September 13, 1916, John Schmierer, Jr., drew two notes of $5,000 each, payable to William Hoffman, on demand, with 6 per cent interest. Schmierer signed said notes "German American Bank. Jn. Schmierer, Jr., Cashier." Each of these notes was indorsed with $300 interest, paid September 13, 1917, and each note was stamped on back and face, "Paid Sept. 13, 1918." For these two notes, two renewal notes of $5,000 each payable on demand to William Hoffman were signed by Schmierer in the same manner as the notes for which they were renewals.

William Hoffman testified that he knew nothing of any of these transactions until August, 1917, when he received from A. N. Hoffman a bank statement showing that on September 13, 1916, his general account had been charged with "Check to G. Am. Bank

for two (2) notes of $5,000 each, $10,000." He testified that he never signed any check for this $10,000, or authorized any to be drawn. William Hoffman returned from Switzerland to the United States in December, 1919, but did not come out to South Dakota until July, 1920. In October, 1923, he got possession of the two renewal notes payable to him, and signed as notes of the bank by Schmierer as cashier. On October 29, 1923, he went to the bank with these two notes, insisted on their being paid, and received from Schmierer a draft for $10,681, which was honored and paid. Hoffman's general account had been credited with $600 per year as interest paid on these notes for the years 1919, 1920, 1921, and 1922. It is for the return of the $10,681 paid to Hoffman when the notes were taken up in October, 1923, that this action was brought.

On September 13, 1917, Schmierer and A. N. Hoffman executed their personal notes for $5,000 each, payable to the bank on demand, apparently to balance the $10,000 credited to their personal accounts, and used by them. These notes were never paid, but Schmierer testified that, after he had paid William Hoffman the $10,681, he gave the bank his note for the same amount, and as security deeded to the bank 470 acres of land in Plymouth county, Iowa, to which he held title. He never paid the note, but the record does not show whether the bank realized anything out of the land.

At the close of all the evidence the defendant moved for a directed verdict, on the ground that the loan to Schmierer and A. N. Hoffman was made out of the funds of the bank and not out of the funds of the defendant, and that the charging of said loan against defendant's account was unauthorized by defendant, and against his express instructions.

This motion was denied, and the court submitted the case to the jury instructing that there was only one question for them to decide, viz., whether at the time the $10,000 was withdrawn from defendant's account A. N. Hoffman had the right to withdraw the money from the defendant's general account—that if he had such authority the verdict must be for the plaintiff, if he did not, the verdict must be for the defendant—that, if he did have authority to check upon or withdraw moneys from said fund, it made no difference what he did with the money after it was withdrawn.

And the court further instructed the jury that, if the preponderance of the evidence shows that the withdrawal of the $10,000 was expressly authorized by the defendant or by a course of business conduct between himself and the defendant, he was impliedly authorized by defendant to take out or withdraw the funds of the defendant on general deposit in the bank, or show that he was intrusted with the management of such funds in such manner as carried with it the right to take out such funds for the purpose of such management, the plaintiff can recover the amount paid on these notes.

Very elaborate exceptions were taken to these instructions by the defendant. The jury returned a verdict for the plaintiff in the sum of $11,304. Defendant moved for judgment notwithstanding the verdict, which motion was denied. Defendant's motion for a new trial was also denied, and judgment entered for the amount of the verdict and costs.

This appeal is from the judgment and the order denying a new trial.

At the trial the plaintiff introduced evidence in attempting to prove that the directors of the bank never authorized the borrowing of any money from William Hoffman. And much space in the briefs is devoted to discussing the legal effect of an unauthorized making of the notes which appellant collected from the funds of the bank. But, for the reasons hereinafter stated, we do not deem that question of any importance in this case.

When the appellant deposited his money in the bank, the relation of debtor and creditor was established. The bank became indebted to him for all funds deposited, and remained indebted for so much of the deposit as was not properly withdrawn therefrom. If the withdrawal of the $10,000 from appellant's account was so authorized as to be binding upon appellant, then there was no consideration to support the notes. On the other hand, if the officers of the bank charged the $10,000 out of the appellant's account without authority so to do, then the bank's indebtedness was not discharged, and the giving of the notes in no way affected the bank's liability for that amount.

The only question in the case is whether the evidence shows that A. N. Hoffman was authorized to withdraw the money, in the manner, at the time, and for the purpose, that it was withdrawn.

The theory of respondents is that A. N. Hoffman was the agent of the appellant, and, as such agent, vested with authority to transfer appellant's funds to his own account and to that of his partner, Schmierer.

Under the statutes of this state, an agent's authority may be either actual authority or ostensible authority.

"An agent has such authority as the principal, actually or ostensibly, confers upon him. Section 1255, Revised Code of 1919.

"Actual authority is such as a principal intentionally confers upon the agent, or intentionally or by want of ordinary care, allows the agent to believe himself to possess. Section 1256, Revised Code of 1919.

"Ostensible authority is such as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe the agent to possess." Section 1257, Revised Code of 1919.

██ There is no proof whatever to show actual authority of A. N. Hoffman to withdraw appellant's funds as a loan to himself. It is affirmatively shown that both he and the bank had been notified that the deposit from which the $10,000 was taken was subject only to the check or written order of appellant. The fact that A. N. Hoffman did not treat the transaction as a loan to himself, but represented it to appellant as a loan to the bank, is proof that he did not believe that he was authorized to charge the amount out of appellant's account and credit to his own and to that of his partner, Schmierer. The record absolutely fails to show that A. N. Hoffman had any actual authority, either express or implied, to make the transfer which he did make. The statute limits the agent's actual authority to such as he had been led to believe that he possessed. Even had he been authorized to withdraw funds to make loans, he could not lawfully withdraw them to loan to himself.

Section 1262, R. C., provides that:

"An authority expressed in general terms, however broad, does not authorize an agent * * * to do any act which a trustee is forbidden to do by the chapter on trusts."

And the chapter further makes it a fraud against the beneficiary to do any of these things. Sections 1195 to 1202, inclusive, R. C.

■■ A. N. Hoffman could not have actual authority to divert the funds to his own use, without special authority given by his principal acting with full knowledge of the facts. As to ostensible authority, the evidence introduced by respondents shows that Schmierer and A. N. Hoffman were the only persons acting for the bank who had any knowledge as to the manner in which appellant's deposit was being handled.

These two men embezzled funds to use for their own purposes. Undoubtedly they expected to repay the money so taken when their real estate transactions enabled them to do so. This they were not able to do. They concealed the actual conditions from the directors by not showing the two $5,000 notes as liabilities of the bank, and A. N. Hoffman explained the condition of appellant's account by representing to appellant that the $10,000 had been loaned to the bank.

As Schmierer and A. N. Hoffman were the only persons acting for the bank in this matter, and as they had knowledge of all the facts involved, there can be no question of ostensible authority in the case.

■ There is no evidence to support the verdict. There was no evidence before the trial court which would justify submitting to the jury the question whether A. N. Hoffman had authority to transfer appellant's funds in the manner in which the transfer was made, and the trial court erred in not granting the motion for judgment notwithstanding the verdict.

The judgment and order appealed from are reversed, and the case is remanded, with direction that the trial court enter judgment in favor of the defendant.

BURCH, P. J., and POLLEY, SHERWOOD, and BROWN, JJ., concur.

CAMPBELL, J., concurs in result.